Martin W. Aron (MA 2008)
Scott H. Casher (SC 7903)
Edwards Angell Palmer & Dodge LLP
Attorneys for Defendant
750 Lexington Avenue
New York, NY 10022
(212) 308-4411



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARC SHERMAN,

08 Civ. CV 0967

                    Plaintiff,

          v.                                    NOTICE OF REMOVAL

MCI COMMUNICATION SERVICES, INC.,
d/b/a VERIZON BUSINESS SERVICES,

                    Defendant.

---

        Pursuant to 28 U.S.C. §§ 1441 and 1446, defendant Verizon Business Network Services

Inc. ("Verizon") (incorrectly pled as MCI Communication Services, Inc., d/b/a Verizon Business

Services), hereby removes this action from the Supreme Court of the State of New York, County

of New York, to this Court.  The ground for removal is diversity of citizenship, 28 U.S.C. § 1332.

Upon information and belief, Plaintiff is a citizen of the State of New York, as alleged in the

complaint.  Defendant Verizon is a Delaware corporation with its principal place of business in

Virginia.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and

costs.

        The summons and complaint, a copy of which is attached as Exhibit A to this notice, was

served on Verizon on January 8, 2008.  Defendant's receipt of the summons and complaint was

its first notice of the claim for relief upon which the action is based.  Removal is therefore

timely.  Upon information and belief, no other process, pleadings, or orders have been entered or

served upon Defendant.

Written notice of the filing of this notice will be given to Plaintiff's counsel and a copy of

this notice will be filed promptly with the Clerk of the Supreme Court of the State of New York,

County of New York.

Dated:  January 25, 2008

Martin W. Aron (MA 2008)
Scott H. Casher (SC 7903)
Edwards Angell Palmer & Dodge LLP
Attorneys for Defendant
750 Lexington Avenue
New York, New York  10022
(212) 308-4411


To:    Carrie Kurzon, Esq.
       The Ottinger Firm, P.C.
       19 Fulton Street, Suite 408
       New York, New York  10038
       (212) 571-2000
       Attorneys for Plaintiff


NWK_Sherman v  Verizon Notice of Removal.DOC/MARON

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing Notices of Removal to be mailed this 29Th day of January 2008, via U.S. mail, first class, postage prepaid to:

Carrie Kurzon, Esq.
The Ottinger Firm, P.C.
19 Fulton Street, Suite 408
New York, New York  10038
(212) 571-2000
Attorneys for Plaintiff

Martin W. Aron (MA2008)

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MARC SHERMAN,

                          Plaintiff,

                vs.                                            Index No.

MCI COMMUNICATIONS SERVICES, INC.,
d/b/a VERIZON BUSINESS SERVICES,                               **COMPLAINT**

                          Defendant.

08100136

FILED
JAN 04 2008
NEW YORK
COUNTY CLERK'S OFFICE

Marc Sherman ("Plaintiff" or "Mr. Sherman"), by and through his attorneys, the Ottinger Firm,

PC, as and for his complaint against MCI COMMUNICATIONS SERVICES, INC., d/b/a

VERIZON BUSINESS SERVICES, ("Defendant" or "Verizon") alleges as follows:

## THE PARTIES

1.  Mr. Sherman is a resident of The City of New York, County of New York. Verizon

employed Mr. Sherman from February 25, 2002 through December 15, 2006.

2.  Verizon provides telecommunication services, and it has offices in The City of New

York, County of New York. Verizon is an employer subject to the Administrative Code of the

City of New York § 8-101 et seq.

## THE NATURE OF THE ACTION

3.  This is a civil action for damages and remedies brought under the Administrative

Code of the City of New York § 8-101 *et seq.* ("New York City Human Rights Law").

Specifically, starting in January 2006, Verizon subjected Mr. Sherman to systematic and

institutional discrimination due to his disability, Attention Deficit Disorder ("ADD"), in violation of the New York City Human Rights Law. Second, Verizon failed to provide reasonable accommodations to Mr. Sherman that would have permitted him to perform the essential functions of his job, despite knowledge of his disability. Third, Verizon retaliated against Mr. Sherman for engaging in the protected activities of protesting Verizon's employment practices through submission of verbal and written complaints to Verizon's Ethics Department, for seeking reasonable accommodations from Verizon and for complaining about Verizon's failure to grant his reasonable requests.

4.    Prior to the commencement of this action, Mr. Sherman served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code §8-502(c).

## FACTS

### Background Information

5.    Mr. Sherman started working at Verizon on February 25, 2002 as a sales representative in its Park Avenue location. In Spring 2005, Mr. Sherman applied for and was hired in the position of Contract Specialist in the Lexington Avenue location.

6.    As a Contract Specialist, Mr. Sherman's duties included: (a) drafting contracts for in-house clients, (b) analyzing formal contract requests from in-house clients, (c) identifying and reviewing existing contracts, (d) drafting master contracts and amendments based on client needs and in accordance with departmental norms and policies, (e) submitting drafts to appropriate individuals for review and redraft according to their comments/corrections, and (f) distributing final drafts to in-house clients. To perform these tasks, Mr. Sherman relied primarily upon a computer, e-mail and telephone.

After Learning Of Mr. Sherman's Disability,
Verizon Discriminates Against Sherman

7.   In early January 2006, Mr. Sherman informed Verizon that he had a disability, ADD, and he requested reasonable accommodations since this would enable him to perform his job functions.

8.   In late January 2006, Mr. Sherman's manager at Verizon informed him that he could no longer work from home "because you have ADD."

9.   Though Mr. Sherman's manager later permitted him to work at a more quiet office site as "a last resort", whenever Mr. Sherman attempted to invoke this privilege, he was verbally disciplined for leaving his cubicle and becoming unavailable.

10.  Mr. Sherman's co-workers were not subject to the same limitations, and they could work from home and move about the office without being subjected to close scrutiny and discipline by management.

After Learning Of Mr. Sherman's Disability, ADD,
Verizon Waits Four To Five Months
Before Providing Any Accommodation

11.  In a January 31, 2006 letter (the "January 31, 2006 Letter") provided to Verizon weeks after Mr. Sherman first informed Verizon of his disability, ADD, Mr. Sherman's physician further informed Verizon that Mr. Sherman had ADD and detailed the type of necessary reasonable accommodation, "a private office or a somewhat isolated cubicle."

12.  Despite the recommendations in the January 31, 2006 Letter, Verizon did not provide Mr. Sherman with any accommodations until nearly four months later and nearly five months after Mr. Sherman's initial request.  Moreover, the accommodations provided by Verizon in May-June 2006 were not consistent with the type described by Mr. Sherman's physician.

3

13. In the January 31, 2006 Letter, Mr. Sherman's physician explained that Mr. Sherman's disability made it difficult for him to perform at his best where "there are distractions such as excessive noise and chatter that are not relevant to his job."

14. Notwithstanding his physician's explanation, for four to five months, Mr. Sherman remained assigned to a cubicle with four substantial sources of visual and auditory distractions: (1) it was adjacent to an employee training facility, (2) it was in proximity to a photocopier and a network printer shared among seventy-five (75) employees, (3) it was close to a coffee concession generating a lot of noise and traffic, and (4) it was among employees from a division different than Mr. Sherman's who engaged in long conference calls via speakerphone, played radios, received personal calls on their cell phones.

15. Though recently informed of Mr. Sherman's ADD, and the negative impact that distractions can have on his job performance, on or about February 14, 2006, before any reasonable accommodations were in place, Mr. Sherman's manager nonetheless approved a negative performance evaluation of Mr. Sherman for 2005. The evaluation included deficits that are demonstrative symptoms of ADD, such as "missing information" and a "need[] to . . . improve[e] . . . quality and accuracy . . .."

16. Moreover, despite failing to offer reasonable accommodations in the four to five months after it learned of Mr. Sherman's disability or in accordance with the January 31, 2006 Letter, on or about May 22, 2006, Verizon placed Mr. Sherman on a four week performance plan/probation (the "Plan/Probation").

17. On May 25, 2006, after placing Mr. Sherman on the Plan/Probation, Verizon implemented alternate accommodations that did not ameliorate the noise and distractions identified in the January 31, 2006 Letter.

4

18.    Specifically, Verizon raised the height of Mr. Sherman's cubicle by approximately eighteen (18) inches and secured a noise-reducing headset that enabled hands free operation of a telephone.

19.    Mr. Sherman, as part of the interactive process to arrive at a reasonable accommodation, informed Verizon that the offered accommodations were insufficient.

20.    Through a letter dated June 7, 2006 – over four months after her initial letter -- Mr. Sherman's physician explained that the alternate accommodations provided by Verizon would not improve the distractions surrounding his workspace.  In fact, his work conditions had become less suitable in the succeeding months since, rather than becoming more isolated, the cubicles surrounding his were now occupied with new employees and the noise-reducing headset would not prove to be a long-term solution and would create new problems such as interfering with Mr. Sherman's ability to hear the telephone.  Once again, Mr. Sherman's physician recommended an isolated cubicle, or even a private office or conference room, emphasizing isolation be by distance and not by artificial efforts to block out sight and sound

Mr. Sherman Complains About Verizon's Discrimination,
Retaliation And Failure To Offer Reasonable
Accommodations. And He Is Subject To Retaliation

21.    In late January/early February 2006, Mr. Sherman verbally informed Verizon's Ethics Department of his subjection to disability discrimination and retaliation, due to his request for a reasonable accommodation.

22.    On March 9, 2006, Mr. Sherman submitted a written complaint to Verizon's Ethics Department emphasizing the issues raised in his earlier verbal complaint.

23.    In violation of its own corporate ethics procedures, Verizon did nothing to investigate Mr. Sherman's complaints.

5

24. Instead, Verizon management subjected Mr. Sherman to retaliation because he invoked the Open Door Policy and submitted an ADA complaint to the Ethics Department.

25. Verizon did not take any steps to investigate Mr. Sherman's retaliation claim until mid-May, three to four months after Mr. Sherman first informed Verizon of these issues.

26. At about the same time Verizon finally investigated Mr. Sherman's complaints to the Ethics Department, Verizon, nonetheless, further retaliated against Mr. Sherman by subjecting him to the Plan/Probation.

27. The Plan/Probation was itself retaliatory since it included numerous subjective criteria such as placing the expectation of "clear and concise written language" in the category of "error-free" work.

28. Moreover, Verizon instituted the Plan/Probation at a time when no reasonable accommodations were in place to address Mr. Sherman's ADD disability. This failure was also retaliatory.

## AS AND FOR A FIRST CAUSE OF ACTION

(Employment Discrimination Under the New York City Human Rights Law,
the Administrative Code of the City of New York § 8-101 *et seq.*)

29. Mr. Sherman hereby repeats and realleges each of the above-mentioned allegations as if fully set forth herein.

30. Verizon is a covered employer under the terms of the New York City Human Rights Law, the Administrative Code of the City of New York § 8-101 *et seq.*, since Verizon employs four or more employees.

31. Mr. Sherman suffers from a disability, or is regarded as suffering from one, within the meaning of the New York City Human Rights Law, the Administrative Code of the City of

New York § 8-101 *et seq.*, because he has been diagnosed with a physical, medical, mental or psychological impairment, ADD.

32. Mr. Sherman was qualified to perform the essential functions of his job with reasonable accommodations of the type specified by his physician in the January 31, 2006 Letter, the provision of "a private office or a somewhat isolated cubicle."

33. Mr. Sherman suffered an adverse employment action due to his disability because he was (a) barred from working from home "because [he has] ADD", (b) subjected to verbal discipline when he sought a more quiet office site in accordance with his manager's instructions, and (c) subjected to a Plan/Probation.

34. As a result of Verizon's discrimination, Mr. Sherman has suffered substantial damages, including but not limited to mental distress, damage to his reputation and lost wages and benefits, in an amount to be determined at trial.

35. Upon information and belief, Verizon's discriminatory actions against Mr. Sherman were taken with malice and/or reckless indifference to his protected rights, entitling him to punitive damages under the New York City Human Rights Law.

36. Verizon is strictly liable for discriminatory actions taken by its employees under N.Y. City Admin. Code § 8-107(13)(b).

## AS AND FOR A SECOND CAUSE OF ACTION

(Failure to Make Reasonable Accommodations
Under the New York City Human Rights Law,
the Administrative Code of the City of New York § 8-101 *et seq.*)

37. Mr. Sherman hereby repeats and realleges each of the above-mentioned allegations as if fully set forth herein.

38. Mr. Sherman had a disability, ADD, as defined by the New York City Human Rights Law, the Administrative Code of the City of New York § 8-101 *et seq.*

39. Verizon had notice of Mr. Sherman's disability since he informed Verizon of his disability in early January 2006 and submitted the January 31, 2006 Letter to Verizon.

40. As stated in the January 31, 2006 Letter, with reasonable accommodations in the form of a "a private office or a somewhat isolated cubicle," Mr. Sherman could perform the essential functions of his job.

41. Notwithstanding, Verizon refused to make reasonable accommodations for Mr. Sherman's needs. In fact, Verizon did not provide any accommodations to Mr. Sherman for four to five months.

42. In the absence of any accommodations, Verizon nonetheless subjected Mr. Sherman to (a) a negative performance evaluation for 2005 in the absence of reasonable accommodations and (b) subjected Mr. Sherman to a Plan/Probation in the absence of prescribed reasonable accommodations.

43. When Verizon finally offered accommodations to Mr. Sherman, they were not consistent with the reasonable accommodations identified in the January 31, 2006 Letter.

44. As part of the interactive process to arrive at a reasonable accommodation, Mr. Sherman informed Verizon that the offered accommodations were insufficient.

45. As a result of Verizon's failure to make reasonable accommodations to Mr. Sherman, Mr. Sherman has suffered substantial damages, including but not limited to mental distress, damage to his reputation and lost wages and benefits, in an amount to be determined at trial.

46. Upon information and belief, Verizon's failure to make reasonable accommodations to Mr. Sherman was done with malice and/or reckless indifference to his protected rights, entitling him to punitive damages under the New York City Human Rights Law.

47. Verizon is strictly liable for the failure of its employees to provide reasonable accommodations to Mr. Sherman under N.Y. City Admin. Code § 8-107(13)(a).

## AS AND FOR A THIRD CAUSE OF ACTION

(Retaliation Under the New York City Human Rights Law,
the Administrative Code of the City of New York § 8-101 *et seq.*)

48. Mr. Sherman hereby repeats and realleges each of the above-mentioned allegations as if fully set forth herein.

49. Mr. Sherman opposed Verizon's unlawful discriminatory employment practices towards him and engaged in protected activity under the New York City Human Rights Law by (a) protesting Verizon's employment practices through his submission of verbal and written complaints to Verizon's Ethics Department, (b) seeking reasonable accommodations for his disability, ADD and (c) complaining about Verizon's failure to grant his reasonable requests.

50. Verizon retaliated against Mr. Sherman for having engaged in the protected activity described above by (a) failing to investigate his complaints to the Ethics Department for several months, (b) failing to make any effort to implement the reasonable accommodations prescribed by Mr. Sherman's physician, (c) subjecting Mr. Sherman to a negative performance evaluation for 2005 in the absence of reasonable accommodations, (d) subjecting Mr. Sherman to a

Plan/Probation in the absence of prescribed reasonable accommodations, and (e) instituting accommodations that were inconsistent with the recommendations of Mr. Sherman's physician.

51. Verizon's actions constitute discrimination and retaliation against Mr. Sherman in violation of the New York City Human Rights Law, § 8-107.

52. As a result of Verizon's retaliation, Mr. Sherman has suffered substantial damages, including but not limited to mental distress, damage to his reputation and lost wages and benefits, in an amount to be determined at trial.

53. Upon information and belief, Verizon's retaliatory actions against Mr. Sherman were taken with malice and/or reckless indifference to his protected rights, entitling him to punitive damages under the New York City Human Rights Law.

Verizon is strictly liable for retaliation by its employees under N.Y. City Admin. Code § 8-107(13)(a).

10

## PRAYER FOR RELIEF

WHEREFORE, while reserving the right to seek additional damages as available,

Mr. Sherman demands judgment against Verizon as follows:

(a)    Back pay and front pay plus compensatory and punitive damages,

attorneys' fees, costs and interest, all in amounts to be determined at trial;

(b)    Such other and further relief as this court deems just and proper.


Dated: New York, New York
       January 2, 2008

THE OTTINGER FIRM, PC

By:    Carrie Kurzon
       19 Fulton Street, Suite 408
       New York, NY 10038
       (212) 571-2000
       Attorneys for Marc Sherman

11